HENRY G. McLEAN, an Infant, by MARGARET McLEAN, His Guardian ad Litem, Appellant, *v.* MARY McLEAN et al., Respondents.

Will — after-born children — application of Decedent Estate Law, § 26 — will construed and held to contain sufficient provision for after-born children — will construed and held to create life estate with remainder over to testator's children or their issue — devolution of real property under the two wills so construed.

1. In applying the statute (Decedent Estate Law, § 26) which makes provision for a child born after the making of a last will, it is settled law that mention of after-born children as a class and in terms broad enough to include a specific child is, in this respect, a sufficient compliance with the statute, and further that this mention may be made in the form of a provision for them.

2. A testatrix, having no children at the time of making her will, devised her real property to her husband for and during his life, and on his death to her issue surviving her said husband, and provided further that if there should be no issue of testatrix or descendants of such issue surviving her said husband at the time of his death, then and in that event the property should go to certain designated cousins. After the execution of said will two children were born to testatrix, a daughter and a son. She died leaving both the children her surviving but the son died, an infant, soon after his mother, intestate. The husband of testatrix died about two years later leaving him surviving the daughter by testatrix and a son by a second wife. After the death of the husband of testatrix, her said daughter died unmarried and intestate, leaving her surviving her half-brother, the son of her father by his second marriage. *Held*, that there was in the will of said testatrix no such failure to mention or provide for after-born children as entitled her infant son to inherit an interest in the real estate in question, as though no will had been made, and which by inheritance might pass to his surviving sister, and through her to her half-brother.

3. The father of said testatrix by his will devised his real property to his wife for life, if she remained unmarried; if she should die during the lifetime of his children, the property to revert to and be divided between his two children (a son and a daughter, the testa-

trix, whose will has heretofore been construed), and if either of said children should die, the portion of said deceased child to revert to the next of kin. Both of the children died before their mother, who never remarried. The son died first, unmarried and intestate. The daughter (the testatrix above named) died thereafter leaving a husband and two children. *Held,* (1) that testator's two children took, under his will, a vested remainder in his real property, ·subject to the life estate of their mother and subject to be divested by death during the latter's life; (2) that on the death of the son, unmarried and intestate, his sister (the testatrix above named) became vested ·absolutely in remainder with his half interest, and, hence, this interest was subject to disposition by her will and was disposed of by her, as heretofore stated, in such a way that her infant son inherited no interest therein; (3) that when testator's daughter (the testatrix above named) died, subsequently, her reversionary interest, in remainder, in one-half of her father's real property passed, under the substitutionary clause of his will, to her next of kin, her two children, and, hence, upon the death of her infant son, after her death and four days after his birth, unmarried and intestate, his interest passed to his sister, the daughter of testatrix, and upon her death, unmarried and intestate, it passed to her heir at law, her half-brother.

*McLean* v. *McLean,* 152 App. Div. 479, modified.

(Argued January 7, 1913; decided February 25, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 10, 1912, which reversed an interlocutory judgment of Special Term overruling a demurrer to the complaint and sustained such demurrer.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Good* for appellant. Henry McLean, 2d, at the time of his death, held a vested remainder in an undivided share of second parcel under the will of his grandfather, Michael Maher. (Cons. Laws, ch. 50, § 40; Cons. Laws, ch. 13, §§ 98, 100; Code Civ. Pro. §§ 2732, 2734; *Matter of Farmers' Loan & Trust Co.,* 189 N. Y. 207; *Lyons* v. *Ostrander,* 167 N. Y. 139; *Fowler* v. *Ingersoll,* 127 N. Y. 972; *Teall* v. *Cons. E. L.*

*Co.,* 119 N. Y. 654; *Marvin* v. *Universal L. Ins. Co.,* 85 N. Y. 278.) The plaintiff inherited from his half-sister, Marie McLean, as her heir at law, all the real estate owned by Marie McLean, excepting such property as came down to Marie McLean on the part of an ancestor, who was not of the blood of the plaintiff. (Cons. Laws, ch. 13, § 90; Remsen on Intestate Succession, p. 16, § 7; *Beebe* v. *Griffing,* 14 N. Y. 235; *Wheeler* v. *Clutterbeck,* 52 N. Y. 67; *Valentine* v. *Wetherill,* 31 Barb. 655; *Emmanuel* v. *Ennis,* 16 J. & S. 430; *Adams* v. *Smith,* 20 Abb. [N. S.] 60.) Catherine McLean died intestate as to this property. Her will did not affect either of her after-born children. Henry McLean, 2d, inherited an undivided half interest of the property, and on his death Marie McLean inherited from her brother that undivided one-half interest. (Cons. Laws, ch. 13, § 26; 2 R. S. ch. 6, tit. 1, art. 3, § 49; *Stackelberg* v. *Stackelberg,* 124 App. Div. 232; 192 N. Y. 576; *Tavshanjian* v. *Abbott,* 200 N. Y. 377; *Wormser* v. *Croce,* 120 App. Div. 287; *Minot* v. *Minot,* 17 App. Div. 524; *Hall* v. *La France Fire Ins. Co.,* 158 N. Y. 572; *Purdy* v. *Hayt,* 92 N. Y. 446; *Hennessey* v. *Patterson,* 85 N. Y. 100; *Dana* v. *Murray,* 122 N. Y. 617; *Riker* v. *Glynn,* 139 App. Div. 424; *Brush* v. *Wilkins,* 4 Johns. Ch. 506.)

*M. F. McGoldrick* for respondents. Catherine (Maher) McLean made provision for after-born children by her will. (L. 1909, ch. 18, § 26; *Minot* v. *Minot,* 17 App. Div. 521; *Wormser* v. *Croce,* 120 App. Div. 287; *McLean* v. *McLean,* 152 App. Div. 479.) The half-brother of Marie McLean is not entitled to any of the real estate which came to her through her mother, or through any ancestor on her mother's side. (L. 1909, ch. 18, § 90.) The will of Catherine (Maher) McLean devised all of her estate to her husband for his life, with remainder to such of her issue as should survive him. On the husband's death the only surviving issue of the testatrix was Marie McLean, who,

therefore, took the entire estate by virtue of the will. The interest of her brother, Henry, 2d, was terminated and divested by his death in his father's lifetime, and passed to Marie, not by descent, but by the will of their mother. The plaintiff, therefore, being only a half-brother of Marie and not of the blood of Catherine (Maher) McLean, has no interest in the property. (Fowler's Real Property Law [3d ed.], 370; *Nat. Park Bank* v. *Billings,* 144 App. Div. 536; *Patchen* v. *Patchen,* 121 N. Y. 432; *Schwencke* v. *Haffner,* 18 App. Div. 182; *Wright* v. *Wright,* 140 App. Div. 634; *Lyons* v. *Ostrander,* 167 N. Y. 135; *Robinson* v. *Martin,* 200 N. Y. 159; *N. Y. Trust Co.* v. *Thomas,* 142 App. Div. 689; *Flanagan* v. *Staples,* 28 App. Div. 319; *Weyman* v. *Weyman,* 82 App. Div. 342; *Hibberd* v. *Lese,* 107 App. Div. 425.) The fee to the Pacific street property vested in testator's children on his death, and was not divested by the death of the widow. Marie McLean eventually became entitled to the entire estate, which, on her death, passed to her uncles and aunt, to the exclusion of the plaintiff, her half-brother. (*Washbon* v. *Cope,* 144 N. Y. 287; *Fowler* v. *Ingersoll,* 127 N. Y. 472; *Vanderzee* v. *Slingerland,* 103 N. Y. 47; *Matter of N. Y., L. & W. R. R. Co.,* 105 N. Y. 89; *Kelly* v. *Kelly,* 61 N. Y. 47; *Barber* v. *Brundage,* 50 App. Div. 123; 169 N. Y. 368.)

Hiscock, J. This action is brought for the partition of two pieces of real estate situate in the borough of Brooklyn, one being known as 101 Sixth avenue and as the " First Parcel " herein involved, and the other piece being known as 453 Pacific street and as the "Second Parcel." The defendants challenge the sufficiency of the complaint on the ground that it appears from the allegations thereof that the plaintiff has no interest whatever in said lands. The justification for this challenge is to be found if at all in the construction and effect of two wills of which only one affects the first piece of real estate and of which both affect

the last-mentioned piece.   In the end all other questions and considerations lead to the decisive one whether an infant known as Henry McLean, Second, and who died at the age of four days, acquired either by devise or by inheritance a descendible interest in these pieces or either of them.   It is conceded that if he did, such interest passed by inheritance to a surviving sister, Marie McLean, and from said sister by inheritance to the plaintiff, who was her half-brother by a common father.   If said infant did not acquire any such interest in said premises it is equally conceded that plaintiff has no interest on which he can bring this action, for in that case, as will more fully appear, whatever interest plaintiff's half-sister, Marie, acquired came directly through an ancestor on her mother's side, and this plaintiff having a different mother would come under the provision of the Decedent Estate Law (Consolidated Laws, chapter 13, section 90) which reads as follows: "Relatives of the half blood and their descendants, shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance came to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

I shall take up first the consideration of what has been known as the "first parcel," situated on Sixth avenue.

Catherine Maher McLean, mother of Marie and the infant Henry, already mentioned, acquired by purchase and died seized of said premises.   She executed a will which in time was duly probated, and which contains the following provisions of importance in this controversy:

" *First.* I give, devise and bequeath after the payment of my lawful debts and funeral expenses, all my estate both real and personal of every nature and kind soever and wheresoever situate to my beloved husband Henry C. McLean, M. D., to have and to hold the same and to use and enjoy the rents, income, issues and profits thereof

during his natural life; on his death, I give, devise and bequeath the same to my issue him surviving.

"*Second.* In case at the death of my beloved husband there shall be no issue of mine him surviving or no descendants of such issue, then I give, devise and bequeath all of my estate both real and personal to my cousins Sarah Maher, Annie Maher, Margaret Maher and Mary Maher of Washington, D. C."

After the execution of said will the two children, Marie and Henry, Second, were born. They were "after-born" children, although the mother was pregnant with the older one when the will was executed. The testatrix died leaving her surviving both of them and also her husband mentioned in the will. The child Henry, Second, as already stated, died four days after his birth and of course intestate. Next in events of consequence, the husband married a second wife by whom was born the plaintiff, and after the latter's birth, first the said father died, and then the other child of the testatrix, Marie, died, unmarried and intestate. As already outlined, the question is whether the infant son of the testatrix, Henry, Second, took an interest in this parcel of real estate which passed by inheritance to his sister Marie, and on the latter's death to her half-brother, the plaintiff.

It is undisputed that the infant Henry, Second, took no descendible interest under the terms of the will, for that clearly provided for a life estate in the husband, Henry C. McLean, with remainder to such issue of the testatrix as should survive him, and which contingency of survival did not befall the child Henry. If we should assume that each child of the testatrix took a vested remainder subject to the father's life estate, this remainder was divested by death during the father's life.

Moved by this failure of any provision of practical value in the will for the child Henry, the appellant insists that there is no sufficient mention of or provision in the will for him as an after-born child, and that, therefore, he

took an interest in said lands by inheritance under the familiar provisions now found in section 26 of the Decedent Estate Law, and which read as follows: "Whenever a testator shall have a child born after the making of a last will,  *  *  *  and shall die leaving such child, so afterborn, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate." There was no settlement, and consequently the inquiry is whether the testatrix in her will "neither provided for nor in any way mentioned" him, and in the discussion of that question I shall take that view of the will which appellant regards as the more favorable to him, namely, that it created for the children of the testatrix merely a contingent remainder rather than a vested remainder subject to divestment by death during the life of the father.

The fundamental object of the statute which has been quoted is to guard and provide against such testamentary thoughtlessness and lack of vision as prevent a testator from contemplating the possibility of after-born children and taking such possibility into account in framing a scheme for the testamentary disposition of his property. For reasons which at once commend themselves to our sense of justice it has been determined, and by statute provided, that if a testator does thus overlook and fail to consider the possibility and claims of those who, if born, will be the natural objects of his bounty, the law will pro·vide for them in the distribution of his estate outside of the terms of his will. But, on the other hand, it has never been held or assumed, in this state at least, that it was the intention of the legislature by this statute to compel, regulate or control testamentary provision even by a parent for children, provided that in the disposition of his property he looked into the future and foresaw and

took into account its possibilities in the way of after-born children and the only proof necessary or permitted to establish sufficient testamentary conception in any case is the requirement in the alternative of mention or provision which has been quoted. While there are surprisingly few decisions in the appellate courts of this state interpreting these requirements, these have nevertheless directly settled some of the important questions arising in reference thereto and have marked the way logically to be followed in the settlement of others.

It is, of course, apparent that the opportunity for individual and specific "mention" of children to be born in the future is limited and it must be regarded as settled that mention of such children as a class and in terms broad enough to include a specific child is in this respect a sufficient compliance with the statute, and further that this mention may be made in the form of a provision for them. (*Wormser* v. *Croce*, 120 App. Div. 287; *Stachelberg* v. *Stachelberg*, 124 App. Div. 232; affirmed, 192 N. Y. 576; *Tavshanjian* v. *Abbott*, 200 N. Y. 374.)

In the last case Judge Gray, referring to the opinion of Mr. Justice Scott in the *Stachelberg* case, wrote: "'We have approved of a construction of the statute, that it is not sufficient that the will should show that the testator had in mind the possibility of children born after the making of the will. The child will take, unless it is mentioned in some way, or included in some class that is mentioned.'" (p. 377.)

In the *Wormser* case the will recited that the testator was "desirous of making a just distribution of his (my) property among the members of his (my) family," and then gave, devised and bequeathed all the testator's estate to his wife "to have and to hold the same to her and to her heirs and assigns forever," and the conclusion was reached, going further than is necessary in the present case, that by these provisions after-born children were "mentioned by the testator in his will."

While it may not be necessary for the disposition of this case, we are naturally led to consider the other requirement of the statute in the alternative that "provision" be made for children of subsequent birth, it being urged that a contingent remainder at least does not satisfy the statutory test.

I think that in the light of the principles underlying the adoption of the statute as they have been recognized in this state, what was said in the cases referred to in holding that the requirement for mention of after-born children is satisfied by a provision for them as a class, naturally if not necessarily leads to the further conclusion that the other and alternative requirement of the statute for provision for such children is satisfied by a will, whereby the testator makes it apparent that he had in mind the possibility of such children, and makes a devise or bequest in their favor, even though such bequest or devise involves some element of uncertainty such as is incident, for instance to a contingent remainder, or of apparent inadequacy.

In construing the statute we are to study it as a whole, and we are justified in interpreting one of its alternative requirements somewhat by reference to the meaning of the other. Inasmuch as the legislature has permitted a testator to meet the possibility of after-born children by mention or provision, and inasmuch as it has been held that "mention" may be made through a very general provision, it would be somewhat idle if not inconsistent to hold that in order to be effective as a "provision" a bequest or devise must be vested, certain and adequate.

We do not, of course, overlook the fact that in the case of *Minot* v. *Minot* (17 App. Div. 521), apparently on the consent of the parties, it was held that a will creating contingent remainders for after-born children did not make a sufficient provision for them within the statute, but for the reasons given we are disinclined to adopt this conclusion. In fact it is rather difficult to greatly differentiate

by any tests of adequacy and practical value a remainder contingent on the survival by the beneficiary of a life tenant and a vested remainder liable to be divested by premature death of the beneficiary during the same life, and which it was in the *Minot* case held and now seems to be conceded would be a sufficient provision.

These views lead to the conclusion that there was in his mother's will no such failure to mention or provide for after-born children as entitled the infant Henry to inherit an interest in the real estate in question as though no will has been made, and which by inheritance might pass to his surviving sister Marie, and through her to the plaintiff.

I next pass to a consideration of the other piece of real estate involved in the action.

One Michael Maher, being the father of the testatrix whose will has just been considered, and being the owner of this parcel, died leaving a will thereafter admitted to probate which contained the following provision: " *First.* After all my lawful debts are paid I give and bequeath to my dear wife Catherine Maher * * * the house and lot known as No. 453 Pacific Street, Brooklyn, to have and to hold the same, and to hold and use the same and the proceeds thereof for her own use and benefit so long as she remains my widow and remains unmarried, and in lieu of her dower, but if my said wife should die during the lifetime of my child or children the said property hereby left to her shall revert and be divided between my two children John and Katie Maher, and should any or either of these children die, the portion belonging to such deceased child shall revert to the next of kin."

Said testator at his death left him surviving his widow, Catherine Maher, and also his two children, John and Katie Maher, the latter subsequently marrying one McLean, and being the testatrix already referred to, and sometimes mentioned as Catherine instead of Katie.

Both of these children died during the life of the mother, John dying first unmarried and intestate and Katie thereafter, leaving a will, husband and children all as already mentioned. It is conceded that by the provision already quoted the testator gave to his widow an estate for life unless she remarried and which event did not arise. It is also plain that the effect of the word "revert" used in this provision with reference to the passage of the title to the real estate on the death of the wife is to create a remainder, the only question being as to the character of the remainder and the identity of the beneficiary. Under well-settled rules which favor a vesting of remainders at the date of decease of the testator rather than a suspension of vesting pending the settlement of some contingency, I believe that this clause can easily and indubitably be construed as giving to the two children surviving the testator a vested remainder subject in enjoyment and possession to the life estate of the mother and also subject to certain substitutional provisions in case of the death of the children during the life of the mother, as happened to be the case. The primary provision is that if the wife should die during the lifetime of the children "the said property hereby left to her shall revert to and be divided between my two children." This seems simple. There is a complete testamentary disposition by a life estate to the wife with vested remainders to the two children simply postponed in enjoyment till the death of the mother, which in the first instance was naturally enough contemplated as liable to occur before that of the children. But the testator appreciated that the natural contingency might not, as it did not happen, and, therefore, he provides for the opposite contingency, that the children, one or both, might die during the lifetime of the mother and wills that in this event "the portion belonging to such deceased child shall revert to the next of kin." That is, that the next of kin by substitution shall take the place of the deceased

child as to its interest by remainder in the real estate of which the mother had a life estate and the words "next of kin" naturally and without doubt mean the next of kin of the child whose case was being considered and for whom substitution was being made.

Some argument is made that this substitionary devise is predicated on a death of the children during the life of the testator, but this cannot be sustained. Independent of the very plain meaning of this clause, the general rule is that where the disposition of the property devised over in case of death is preceded by a prior estate for life or years, the death which is contemplated is one occurring during the period of the intervening estate. (*Matter of Farmers' Loan & Trust Co.*, 189 N. Y. 202, 207.)

Applying this construction to the facts which arose, the result appears to be perfectly plain. John died first, unmarried and intestate, and his next of kin under this provision became vested absolutely in remainder with his half interest, for there is no provision for any further or second substitution as to the interest of John than the first one that it should go to his next of kin.

When subsequently Catherine died, being the beneficiary of a half interest in remainder through her own original right and not through John, and leaving two children, the substitutional feature of the provision again took effect, and this one-half interest passed to her next of kin, namely, her two children. Whatever interest in the remainder originally belonging to John she had taken absolutely as his next of kin under the substitutional provision of her father's will was subject to disposition by her will, and went in accordance with the terms thereof, but her infant son, Henry, Second, as a substitutional devisee under his grandfather's will, took finally and absolutely a half interest in remainder in the half interest which would have been his mother's if she had survived her mother. Upon the death of the infant, Henry, Second, this quarter interest passed to his sister

Marie by inheritance, and from her on death intestate and unmarried by inheritance to the plaintiff.

What has already been said as to the construction and force of the will of Catherine McLean, in connection with the other piece of real estate, is of course applicable to this piece. Her infant son was sufficiently mentioned in said will so that he did not get any benefit by virtue of the statute by way of interest in the other real estate of his mother, and, therefore, whatever interest in remainder his mother took absolutely as a substitutional devisee when her brother John died passed under her will, and did not go to the infant child Henry, Second, and through him to his sister and the plaintiff.

In accordance with these views the order of the Appellate Division reversing the judgment overruling defendant's demurrer to the first cause of action should be affirmed, and so far as it reverses the judgment overruling the demurrer to the second cause of action it should be reversed and judgment ordered for plaintiff on demurrer, without costs to either party in the Appellate Division or in this court as against the other.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, CHASE, COLLIN and HOGAN, JJ., concur.

Ordered accordingly.