In the Matter of the Application of MARY G. MULQUEEN for a Construction of the Last Will and Testament of MICHAEL J. MULQUEEN, Deceased.

CARR MULQUEEN, by JOSEPH W. KELLER, His Special Guardian, Appellant; MARY G. MULQUEEN, Executrix, etc., of MICHAEL J. MULQUEEN, Deceased, Respondent.

First Department, July 6, 1925.

Wills — construction — after-born child — will construed not to provide for or mention after-born child within meaning of Decedent Estate Law, § 26 — after-born child takes share it would have taken had testator died intestate.

A child born to the testator after the execution of the will in question is not provided for in the will nor mentioned therein within the meaning of section 26 of the Decedent Estate Law and is, therefore, entitled to share in the estate as though the testator had died intestate, where the will devised all the property of the testator to his wife, with a provision that in case she should predecease him the property should be held in trust for his three children, naming them, and that on the death of any child without issue the principal of the trust fund set up for the benefit of that child should be disposed of to " my children " equally, share and share alike, or to the survivor of them, and where the whole scheme of the will indicates that the testator had in mind only the three children living at the time the will was made.

The testator, by the use of the words " him or her " in relation to the gift over upon the termination of the trust for the life of his son, did not intend a possible gift over to an after-born male child.

APPEAL by Carr Mulqueen from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 13th day of March, 1925, construing the will of Michael J. Mulqueen, deceased.

*Joseph W. Keller*, for the appellant.

*Cadwalader, Wickersham & Taft* [*Henry W. Taft* of counsel; *Thomas B. Gilchrist* with him on the brief], for the respondent.

FINCH, J.:

This is an appeal from a decree of the surrogate construing the will of the decedent. The question involved is whether a child

born subsequent to the making of the will is entitled to share in the estate of the decedent as though he had died intestate, and there being no question of any settlement herein, this depends upon whether the after-born child was provided for or in any way mentioned in the will of the testator. (Decedent Estate Law, § 26.) That section provides in its pertinent portion as follows:

"Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will."

In *McLean* v. *McLean* (207 N. Y. 365) HISCOCK, J. (now Chief Judge), speaking for the Court of Appeals, emphasized the important portion of said section, which requires either a provision for or a mention of after-born children in some way in such will and pointed out that mention may be made through a very general designation, and that so far as the provision goes, it is sufficient if the same is vested or contingent, the court saying: "In construing the statute we are to study it as a whole, and we are justified in interpreting one of its alternative requirements somewhat by reference to the meaning of the other. Inasmuch as the Legislature has permitted a testator to meet the possibility of after-born children by mention or provision, and inasmuch as it has been held that 'mention' may be made through a very general provision, it would be somewhat idle if not inconsistent to hold that in order to be effective as a 'provision' a bequest or devise must be vested, certain and adequate." And in *Stachelberg* v. *Stachelberg* (124 App. Div. 232; affd., on opinion below, 192 N. Y. 576) this court, through SCOTT, J., said: "It is not sufficient that the will should show that the testator had in mind the possibility of children born after the making of the will. The child will take unless it is mentioned in some way or included in some class that is mentioned."

We are thus brought to an examination of the will of the decedent in order to ascertain whether the intention of the testator, as expressed in the will, was to provide for or in any way mention the after-born child. Before such a measure each will stands alone, and in the ascertainment of the testator's intention in his individual will a consideration of the intention of other testators in other wills is usually not helpful. In *Tilden* v. *Green* (130 N. Y. 29, 55)

BROWN, J., speaking for the court, said: " Our duty is to ascertain the testator's intent from an inspection of the will, and for this purpose we must read the whole instrument, including the provisions admitted to be void. Those provisions, though ineffectual to dispose of the property, cannot be obliterated when examining it for the purpose of ascertaining the testator's intention."

Coming then to the will of the decedent, we find the following: The will of Michael J. Mulqueen was executed the 18th day of July, 1905. At that time there were in being, besides the testator's wife, Mary G. Mulqueen, three children of the testator, namely, Estelle Mulqueen, Gilroy Mulqueen and Mary Madeline Mulqueen. Carr Mulqueen, the appellant in this proceeding, was born June 27, 1906. Gilroy Mulqueen predeceased the testator. The testator died October 12, 1924, and was survived by his widow, Mary G. Mulqueen, and by his children, Estelle Mulqueen Reilly, Mary Madeline Mulqueen Daly and Carr Mulqueen.

By the terms of his will the testator, after providing for the payment of debts, devised and bequeathed all his real and personal property to his wife, Mary G. Mulqueen, and appointed her sole executrix. In the event of the death of his wife before him, the testator devised and bequeathed his entire estate, real and personal, to the Farmers' Loan and Trust Company of New York, in trust, to divide the same into three equal parts and to hold one of said parts for the benefit of each of his three children who were living at the date of the execution of the will. Selecting the trust for the son Gilroy as typical of all, it provided that the annual income from the trust fund to the extent of $2,000 should be used for his support, maintenance and education and that the balance of such income should be accumulated until such beneficiary should attain the age of twenty-one years, when such accumulated surplus income was to be paid to him; that upon his attaining the age of twenty-five years, one-third of the principal of the trust was to be paid to him, and that upon his attaining the age of thirty years another third of the principal was to be paid to him, and that upon his attaining the age of thirty-five years the remaining one-third of the principal was to be paid to him, and that in the meantime he should receive the entire income from the said trust for his benefit. The testator then provided that in the event of the death of his said son leaving lawful issue, such issue should take his share of his estate, and in the event of the death of his said son without leaving lawful issue, ".then I direct that the income, rents and profits of his said one-third share in my estate shall be accumulated until my youngest child living at the death of said Gilroy Mulqueen reaches the age of twenty-one years, when said accumulations of

income, rents and profits shall be paid to my children equally, share and share alike, or to the survivor of them. However, should there be only one child living at the time of the death of my said son, Gilroy, then the income, rents and profits of his said one-third share shall be accumulated during the minority of said surviving child, and upon his or her arriving at the age of twenty-one years, then the whole of the accumulations of said income, rents and profits shall be paid to him or her. That thereafter the total net annual income, rents and profits of the said one-third share of said Gilroy Mulqueen shall be paid annually, in quarterly installments, to my children equally, share and share alike, or to the survivor of them, until the youngest child reaches the age of twenty-five years, when one-third of the principal of said one-third share of Gilroy Mulqueen is to be paid to my children equally, share and share alike, or to the survivor of them. And the total net annual income, rents and profits of the remaining two-thirds of said one-third share of said Gilroy Mulqueen shall be paid annually, in quarterly installments, to my children equally, share and share alike, or to the survivor of them, until the youngest child reaches the age of thirty years, when another one-third of the principal of said one-third share of said Gilroy Mulqueen shall be paid to my children equally, share and share alike, or to the survivor of them. And the total net annual income, rents and profits of the remaining one-third of said Gilroy Mulqueen shall be paid annually, in quarterly installments to my children equally, share and share alike, or to the survivor of them, until the youngest child reaches the age of thirty-five years, when the whole of the principal of the remaining one-third share of the said Gilroy Mulqueen shall be paid to my children equally, share and share alike, or to the survivor of them."

The learned surrogate has carefully considered the question in his opinion (124 Misc. 705), his conclusion being that the said after-born child was mentioned and provided for in the will. This conclusion is predicated upon the fact that in the contingent trusts providing for his three children then living, the testator in each such trust provided that in the event of the death without issue of the particular beneficiary, the share of such beneficiary should then be accumulated for a certain period and paid " to my children equally, share and share alike, or to the survivor of them," holding that the use of the word " children " referred to a class of which the after-born child was a member, and hence there was a provision for such child. The conclusion of the surrogate was predicated also upon the fact that the testator, in providing for the contingency should there be only one child living at the time of the death of his son Gilroy, used the words " him or her " in referring to such surviving child, holding

that since the testator had but one son at the time of making the will, he must have contemplated the possibility of another son being born when he used the word " him," since otherwise there would be no occasion for the use of such word, as said living son could only be survived by living daughters.

In so far as the first premise is concerned, namely, the use of the general term " my children," the testator in his will has the use of this term limited by naming his children.

In the 6th paragraph of the will he provided " my children, Estelle M. Mulqueen, Gilroy Mulqueen and Mary Madeline Mulqueen," thus showing clearly the sense in which he used the words. In *United States Trust Company* v. *Taylor* (193 App. Div. 153, 158) the court quotes approvingly from *Matter of Birks* (69 L. J. Ch. [N. S.] 124; 81 L. T. [N. S.] 741) as follows: " It is not a canon of construction, but only a concise way of putting a principle of common sense, to say that when a testator has made a dictionary for himself, we must look at that to see in what sense he has used the words in his will. * * * If we find from a will, as we do here, that a testator has used a word in a particular sense, we must give it that meaning wherever it occurs in the will."

Also from the general context of the will it is apparent that the testator had in mind only those children who were living. Said living children were carefully provided for by name and the whole structure of the will was devised having in mind the wife of the decedent and his three living children. In the event of the death of his wife, his entire estate was divided into three equal portions and one portion set aside for the benefit of each of his living children. The fact that the testator followed the equitable rule of equality and treated each of his living children alike and divided among them the entire estate, besides providing an income of $2,000 a year for the maintenance and education of each of the children living goes a long way in showing that the testator had in mind exact equality as to his children and as the objects of his bounty, his family as they then existed, and negatives an intention to have in mind after-born children.

In the cases of *Holbrook* v. *Holbrook* (193 App. Div. 286; affd., 230 N. Y. 600) and *McLean* v. *McLean* (207 id. 365), relied upon by the surrogate, the general term " to my lawful issue " was used, and at the time of the making of the will there were no children in existence, hence after-born children necessarily were contemplated and included within the term " lawful issue," and, therefore, did not take under section 26 of the Decedent Estate Law.

Coming now to the use of the words " him or her " in relation

41

to the gift over upon the termination of the trust created for the life of the son Gilroy, to hold that by the mere use of these words, the testator intended a possible gift over to an after-born male child, is repugnant, as noted, to the whole scheme of the will. The very same phraseology was used in the preceding trust and in the following trust set up for the two living daughters of the testator, and it is clear that the expression was a set or stereotyped one, used by the testator as such, and without any intention to hang thereon the inheritance or disinheritance of the natural objects of his bounty. It is entirely insufficient to rebut an intention to limit the terms of the will to the living children otherwise clearly shown to exist.

While it is clear that the general plan of the testator was that none of his children should take any portion of his estate in the event his wife survived him, and, the widow having survived, it seems inequitable that the after-born child should stand in a more advantageous position than the children living at the time of the making of the will, and receive a large portion of the estate to their exclusion, nevertheless, since the appellant comes within the provisions of the statute, it is not for the court to strain at a construction that will avoid the provisions of the statute. So to do would be a construction of expediency, adopted because the widow survived the testator. Had the widow predeceased the testator, in the absence of any provision for the care and maintenance of the after-born child, can it be doubted that the court would have construed the will so as to permit such child to take under the act?

The language used by the court in *Crocker* v. *Mulligan* (154 App. Div. 711) is applicable, where although there was an apparent unbalancing of the scheme of the testator by the birth of a child after the making of the will, such child was permitted to take his intestate share under the statute while the other children received nothing. The court said: " Engrossed by consideration of those who were realities in his solicitude, he forgot the possibilities of the future. Of course, if he had mentally forecast the indefinite issue of his marriage he would have provided for such unknown children nothing beyond committing them to the care of his wife. So that the statute works out this — the living objects of his love take nothing; the child, unborn, unconsidered, takes one-quarter of the estate, although, if considered then whether born or not, she would have received nothing. For it is beyond reason that the father would have denied a gift to any one of his three daughters and given something to issue that might be born."

If, however, the real object sought to be maintained by the enactment of what is now section 26 of the Decedent Estate Law is

borne in mind, it is at once apparent why any seeming incongruity in the application of the section in the particular case must give way before the general purpose of the enactment. This purpose is set forth in *Wormser* v. *Croce* (120 App. Div. 287, 289) as follows: " It was, as we consider, the principle of the Civil Law that was intended to be engrafted upon our law by the statute above quoted [2 R. S. 65, § 49; now Decedent Estate Law, § 26], the object being not to secure equality of distribution, but to guard against *inadvertent* or unintentional disinheritance, or, as the revisers expressed it in their notes, a ' probable oversight.' Therefore, it was provided, in order to sustain a will against the claims of after-born children, that provision must have been made for them, or that they must have been in some way mentioned in the will, either provision or mention being sufficient. If, therefore, it can be seen or reasonably presumed from the terms of the will itself that the testator had in mind the probability that children might be born after the will was made, and provided with that contingency in mind, the statute will be satisfied and the will sustained."

It follows that the decree should be reversed, and the matter remitted to the surrogate for disposition in accordance with this opinion.

CLARKE, P. J., McAVOY and MARTIN, JJ., concur.

Decree reversed, with costs of this appeal to both the appellant and respondent payable out of the estate, and matter remitted to the surrogate for further action in accordance with opinion.