## In the Matter of the Estate of AUGUST LACHENMEYER, Deceased.

Surrogate's Court, New York County, April 6, 1928.

*Louis V. Ebert*, for the trustee.

*Curtis, Fosdick & Belknap* [*Chauncey Belknap* of counsel], for the trust beneficiaries.

*Friend L. Tuttle*, for the contestants.

*Battle, Vandiver, Levy & Van Tine*, for the legatees.

*Edmund L. Mooney*, for the petitioner (creditor).

FOLEY, S.   The issues raised by the objections filed to the account of the trustee herein have been heard and determined by a referee. Exceptions filed to the referee's report bring all of his findings of fact and conclusions of law before the surrogate for review.   I hold that the referee's report must be modified as follows: (1) That the

decedent was a resident of Germany at the time of his death and not of New York as found by the referee; (2) that the determination of the testator's residence in Germany is *res adjudicata* by reason of the decrees in the probate proceeding and in the subsequent accounting proceedings; (3) that the referee erroneously held that the trusts created under the will were invalid under the laws of New York; (4) that such trusts were valid under the laws of Germany; and (5) that the referee erroneously surcharged the trustee in the sum of $54,644.72, the principal and interest on the sum of $10,000 paid to the children of Adolph Lachenmeyer and other payments to certain life tenants. I hold that all of such payments were properly made by the trustee. Finally, I hold that the present trust for the benefit of Martha Neuhart is valid for her life, and that upon her death the trust fund must be paid over as follows: " $50,000 to the vested remaindermen named in the will, viz., Johann, Georg, Walter and Jakob Neuhart, or to their estates, and that the remaining $10,000 passed under the will to the residuary legatees.

1. The testator was a native-born German. He came to America at the age of twenty-eight years, and acquired citizenship in this country. At the age of seventy-two he returned to the land of his birth, and remained there for six years, or until his death at the age of seventy-eight. In his application for a passport at the time he left this country in 1898 he signed the usual printed form which included a statement that he intended to return within two years to resume his citizenship here. In 1901 he made application in Berlin, Germany, for a diplomatic passport, which application contained a similar statement. On December 13, 1902, he wrote a letter to Marcus Elmore, a resident of New York State, in which he stated: " When I left home four years ago I requested Annie to take such care of it that I could come back any day, as such was my intention at first." That letter referred to the house in which testator had lived before his departure from this country. It appears that for the six years prior to his death testator spent most of his time in Neustadt-am-Haardt, a small Bavarian town near where he was born. During that time he invested the greater part of his wealth in German mortgages and bonds. On November 3, 1903, he made his holographic will in the German language, describing himself therein as " of New York, at present stopping at Neustadt-am-Haardt." Another translation read: " At present residing at Neustadt-Am-Haardt." In his will he requested that his corpse be forwarded to the nearest crematory for cremation, and [he gave to his niece, Martha Neuhart, residing in Germany, his " clothes, furniture, &c." The provisions of his will, which the referee has declared invalid

under the laws of New York, were in full compliance with the laws of Germany. Because of the statements contained in the application for the passports, and testator's description of himself in the will as " of New York," and chiefly because he considered that the will was drawn with reference to the New York law with an intention to have the estate administered under the laws of this State, the referee has held that the evidence adduced by the trustee did not sustain the burden which was on him to show that testator intended to change his domicile from New York to Germany. In his opinion the referee correctly states that the domicile of origin is presumed to continue until the new one is acquired (citing *Dupuy* v. *Wurtz*, 53 N. Y. 556), and the burden of proof rests upon the party alleging a change of domicile (citing *Matter of Newcomb*, 192 N. Y. 238). He further states: " It is also well settled that more evidence is required to establish a change of domicile from one nation to another than from one state to another." It would appear that the referee overlooked or disregarded the fact that for this testator the change of domicile from New York to Germany would be not merely a change from one country to another, as in the cases cited in his opinion, but would be a resumption of his domicile of origin. The rule which should have been applied is that the native domicile easily reverts, and fewer circumstances are necessary to establish it than to establish foreign domicile. In close cases of mixed domicile, wherein a decedent had gone back to the land of his birth, great consideration should be given to the domicile of origin, and less evidence is required to establish such a change than to show a change from the domicile of origin to another country. (See *Matter of Robitaille*, 78 Misc. 108; *Marks* v. *Marks*, [C. C.] 75 Fed. 321; *Matter of Wrigley*, 8 Wend. 134, 142.) The application of such rule makes the evidence adduced by the trustee herein sufficient to establish the change in the domicile of testator from New York to Germany. This is not the case of a native American possessed of large means who went abroad in search of health or pleasure, such as was the case in those decisions cited by the referee, but rather the case of a retired merchant of advanced years who returned to his native land to spend the remaining years of his life there. In view of the foregoing, the testator's description of himself as " of New York" has very little weight as affecting the question of domicile. (*Matter of Lydig*, 191 App. Div. 117; *Matter of Mesa y Hernandez*, 172 id. 467; *Matter of Pick*, N. Y. L. J. Nov. 12, 1926.)

2. In all of the proceedings had in this court in the estate, including the proceeding for the probate of the will, the transfer tax proceeding and two prior accountings, the executor and trustee has consistently alleged that testator's will was that of a non-resident,

and none of the parties, nor their representatives who appeared in the proceedings, raised a dissenting voice until this, the third accounting proceeding, which was begun twenty-two years after decedent's death. In the probate proceeding the petitioner alleged that testator " was not a resident of the County or State of New York at the time of his death, but departed this life at Neustadt-am-Haardt, Germany." In the prior accounting proceedings, the first as executor and the second as trustee, all of the parties interested were cited, including the nine objectants herein. Three of them were adults in the latter proceedings, both of which resulted in decrees dated February 10, 1910, and May 24, 1910. The six objectors who were infants were always protected by special guardians appointed to represent them. Jurisdiction having been obtained of all of the objectors, the former decrees are conclusive against them as to all matters embraced therein, including the payments shown by the accounts to have been made. (Surr. Ct. Act, §§ 80, 274.) (See, also, *Matter of Hood*, 90 N. Y. 512, as to the conclusiveness of the prior decrees against those who were named as infants therein.)

3. My decision that this decedent was a resident of Germany and not New York, and the additional fact of the conclusiveness of the decrees, necessarily determines the validity of the trusts under the will. It has been conclusively proven that the laws of Germany, the country of domicile of the testator, recognize the legality of these trusts. It may be interesting to point out, however, that a proper analysis of the terms of the will, upon the supposition that the testator died a resident of New York, or that the trust was intended to be administered in New York, would sustain the validity of the principal act complained of, to wit, the distribution of $10,000 to the children of Adolph Lachenmeyer. Notwithstanding the fact that the will was drawn in a foreign country by a person not familiar with our law, it is not difficult to discern the intent of the testator. He created several trusts, independent and easily capable of division in the process of sustaining their validity.

(a) As to the provision for the benefit of testator's sister-in-law, Mrs. Adolph Lachenmeyer, who was given $600 annually, it would appear that the testator had computed the principal fund which would earn such income, for in disposing of the remainders he gave $10,000 to " the children of Adolph Lachenmeyer." The proper construction of the provision disposing of that remainder is that it vested upon testator's death in the Lachenmeyer children alive at that time, with payment only postponed during the lifetime of their mother and the minority of the youngest child to survive the testator. Mrs. Lachenmeyer having died, and all of the children having

attained majority, the trustee has distributed the $10,000 among them equally, with the exception of the son William, who was expressly excluded from participation by the will.

(b) The provision giving the balance of income earned by the fund of $70,000 to Martha Neuhart is equally valid. Here again the remainder provisions give $50,000 to " the children of my niece Martha Neuhart." That such remainder was vested in those of her children who were alive at testator's death is evidenced by his specifically naming the four of them in the will (*Matter of Mulqueen*, 213 App. Div. 637; affd., 241 N. Y. 583), and by his reference to his niece as " the widow Neuhart." Furthermore, the will indicates that the respective remainders were to vest upon " the death of Mrs. Neuhart or Mrs. Lachenmeyer." This indication of divisibility of the fund was misconstrued by the referee, who held there could be no vesting until the deaths of Mrs. Neuhart and Mrs. Lachenmeyer.

(c) There are left for consideration two gifts of income, viz., $300 per annum to Anna B. Neumann, who for years was testator's housekeeper, and $600 annually for her daughter, Anna Neumann. Upon the death of either of them, her income was directed to be paid to the survivor, and upon the death of the survivor the combined sums of income were directed to be paid to testator's niece, Martha Neuhart. Under such testamentary scheme one of the gifts of income would be clearly valid, for it could pass through but two lives in being. In this case it was the gift to Anna B. Neumann, who survived her daughter, and whose $300 annual payment is now being received by Martha Neuhart after having passed through but one prior life. Under that construction, the secondary provision, for the benefit of the daughter, might be declared invalid as having passed through her life and the life of her mother before reaching the life of Martha Neuhart. It would be possible, however, to excise the invalid provision to save those which were valid. As pointed out above, $10,000 of the remainder vested absolutely upon testator's death in the Lachenmeyer children and $50,000 thereof in the Neuhart children. The remaining $10,000 vested likewise in the residuary legatees. When a remainder is vested at the death of a testator, an invalid provision which precedes it may be eliminated and the remainder accelerated. (*Matter of Hitchcock*, 222 N. Y. 57, 73; *Kalish* v. *Kalish*, 166 id. 368.) The only invalid provision under the construction suggested would be that for the benefit of Anna Neumann. Taking the testator's own computation of principal which would earn the $600 per annum for her (as evidenced by the gifts of $600 annually to Mrs. Lachenmeyer, and the remainder of $10,000 to her children), the court might separate

the sum of $10,000 from the $60,000 fund and direct its payment, five-sixths to the Neuhart children and one-sixth to the residuary legatees. In such event the remaining $50,000 would be paid over in the same fractional portions, and to the same remaindermen, upon the death of Martha Neuhart. Furthermore, there is no indication in the will that the trust was to be administered in accordance with the laws of New York, so as to bring it within the rule stated in *Mena* v. *Virnard* (124 Misc. 637), and the cases therein cited.

My conclusion that the valid parts of the will could be salvaged under the law of this State, and the testamentary scheme given effect, is supported by a recent decision of our Court of Appeals. In *Matter of Gallien* (247 N. Y. 195, 199, 201) the court construed a will wherein the entire estate was given in trust with direction to pay the income, fifty dollars a month, to a foster daughter as long as she might live, and the balance to testator's wife. There was a further provision that, should the wife be survived by testator's son, then the income should be expended for his support and maintenance. The direction for payment of the remainders was contained in the following clause: " When the above payments shall cease by reason of the deaths of the beneficiaries mentioned, I direct my said trustee to pay the following bequests in the order mentioned," etc. The court held that the trust was valid, and the proper construction was that upon the death of the wife and son, with the foster daughter surviving, the trustee's duty was to retain out of the trust an amount adequate to make provision for the monthly payments of fifty dollars to the foster daughter and to make division of the residue. The following language of the court's decision is pertinent and applicable to the present case: " The will in that view is to be construed as if it read: ' As the above payments shall cease (or shall severally cease) by reason of the deaths of the beneficiaries mentioned,' what is undisposed of shall be divided. Such a reading has support in the evidences of intention furnished by the will itself as well as in settled principles of testamentary construction. One of the best known of those principles is that if two or more constructions are reasonably possible, the one that will sustain the validity of the will is to be preferred, generally speaking, to the one that will defeat it. (*Roe* v. *Vingut*, 117 N. Y. 204, 212; *Phillips* v. *Davies*, 92 id. 199; *Greene* v. *Greene*, 125 id. 506, 512.) The court struggles to preserve, and surrenders to nothing short of obvious compulsion. In the attainment of its end, it may ' reject words and limitations, supply them or transpose them, to get at the correct meaning.' (*Phillips* v. *Davies, supra;* cf. *Roome* v. *Phillips*, 24 N. Y. 463.) " In refusing to include the life of the foster daughter

as one of those by which the trust term was measured, the court said: "The wife and the son were the chief objects of solicitude. The care of them was the primary purpose of the trust. The trifling provision for the 'foster daughter' was an incident and nothing more. To tie up the whole estate in a continuing trust after the death of his wife and son in order to make these petty payments, is a result so extraordinary, even if it were lawful, that only words inexorably clear should drive us to accept it. Acceptance will be the more reluctant when one of the consequences accompanying it is to make the will unlawful." So in this case, the court might well say that the annuities to the Neumann women, even if they had survived Mrs. Lachenmeyer and Martha Neuhart, would not have made the lives of the former two of the lives measuring the term of the trust. In that event, as in the *Gallien* case, a fund might have been set aside sufficient to pay the annuities in question, and the remainder of the property paid to the remaindermen. In this case there is even a stronger indication of such an intention of the testator, for, as above pointed out, although the total fund given to the trustee is $70,000, but $60,000 of the fund is given in remainder, leaving a surplus of $10,000 which might have been applied toward the payment of the Neumann annuities.

Submit decree on notice modifying the referee's report and settling the account accordingly.