In the Matter of the Estate of CHARLES A. YATES, Deceased.

Surrogate's Court, Oneida County, July 28, 1932.

*Hiscock, Williams & Cowie,* for the trustee, First Trust and Deposit Company of Syracuse.

*Charles W. Andrews,* for Eleanor M. Yates and American National Trust and Savings Association, executor, etc., of C. Halstead Yates, and for Eleanor M. Yates, individually.

*W. T. Van Alstyne,* for C. Halstead Yates, 2d, individually and as executor and sole legatee, etc., of Esther A. Yates.

*Miller & Hubbell,* for John Martin Yates, individually and as executor and sole legatee, etc., of Leila M. Yates James.

Evans, S.   This proceeding is an accounting by the trustee of the trust for C. Halstead Yates, deceased, coupled with a petition for the construction of certain portions of the last will and testament of the above-named testator.   He died in Utica, N. Y., on July 5, 1872, leaving a will bearing date June 3, 1872, that was admitted to probate in this court on July 30, 1872.   At the time of his death the testator was survived by a widow and three children, Esther, Charles and John.

On January 3, 1873, the widow gave birth to a posthumous daughter who was named Leila.   This child was not mentioned in the will.   She married a man named James and died on September 28, 1924, leaving no children.   She was the first child of the testator to die.

Esther A. Yates, the other daughter, died on February 8, 1930, leaving a last will and testament in which she bequeathed all of her interest in this estate to her son, Charles Halstead Yates, 2d.

Charles Halstead Yates, a son of the testator, died on December 30, 1931, without leaving any children, and by a last will and testament gave all of his property to his widow.

There is now but one surviving child of the testator, John Martin Yates.

The amount of the trust estate to be distributed is $29,738.86, subject to deductions for commissions, costs and disbursements.

The issue now to be determined is to ascertain the rightful owner or owners of this fund.   Three distinct theories of distribution are advanced.   John Martin Yates, the surviving child of the testator, claims the entire amount.   C. Halstead Yates, 2d, a child of Esther Yates, a deceased daughter of the testator, claims one-half of the fund as such child and as a legatee under the will of his mother.   The remaining one-half he concedes belongs to his uncle, John Martin Yates.   The estate of C. Halstead Yates (deceased son of testator) and his widow, Eleanor, claim one-fourth.

These conflicting demands originate from different views of con-.

struction of the will of testator supplemented by the confusion created by the birth of the posthumous child, Leila.

Reference is made only to such parts of the will as seem to have a bearing on the matter under consideration.

The first provision is for the widow, to whom the executors and trustees are directed to pay annually during her life the income from one-third of the estate, less $20,000 already paid to her. In the event of her death before any of her children, such income was directed to be equally divided between such children during their respective lives. Mrs. Yates died in 1876, before any of the children.

This paragraph then follows: " But if she die after the death of one or more of said children, then the share or principal sum of which she has received the income for life, that is one third of the trust estate less twenty thousand dollars is to be divided equally between the surviving children share and share alike, and if any who have died have left children, such children to take equally between them the share the parent would have taken if living."

The will then provides for an annual life payment of $200 to the sister of the testator.

This paragraph then follows: " On the death of my sister, the principal sum producing such income is to be divided between my children then living. If any have died leaving children such children to take the share the parent would have taken if living, to be divided equally between them, if more than one."

The next paragraph directs that the income of the remainder of the estate shall be divided into as many parts as there shall be children and to pay annually to such child one of such parts during his or her life.

The " fifth " paragraph reads as follows:

" *Fifth.* Any of my children dying and leaving a child or children surviving, may by last will and testament dispose of the one third part of the estate, and of such further life estate or interest he or she may have acquired therein by reason of the death of a brother or sister (subject to the life estate of my wife and sister therein as herein above provided, if they or either be then living) to any wife or husband he or she may leave and to such children and to their heirs and assigns forever.

" In the absence of any such last will and testament it is my will that such share of the estate shall go to such children in equal portions, if there be more than one. If such child of mine first dying, leave no child or children surviving, and my wife shall then be living, it is my will that the income received from the estate by the deceased, shall be divided equally between the surviving children

in the same manner as they received their original share of the income.

" If a second child die leaving no children or child surviving whether before or after the death of my wife, the survivor is to take the *proportionate* share of the principal of which he or she has received the income (subject however to the life estate of my wife and sister therein as hereinbefore provided if either be living) to have and to hold the same to his or her heirs and assigns forever. If my wife shall be dead at the time of the first child dying as above mentioned, then I give absolutely the share of the deceased of the principal of the trust fund to the survivor or survivors, share and share alike."

The birth of Leila, the posthumous daughter, is the event that now creates the controversy concerning the proper distribution of the property under the will. The statute governing this situation reads as follows: " Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will." (Dec. Est. Law, § 26.)

It is unnecessary to cite cases supporting the long-established rule that in construing wills the primary duty of a court is to seek the intention of the testator.

It is equally well established that in the search for testamentary intent the court must consider facts and circumstances as they existed at the time of making a will and not by what subsequently occurred. (*Matter of Hoffman*, 201 N. Y. 247; *Furniss* v. *Cruikshank*, 230 id. 495.)

The provisions of the will reveal on the part of the testator a natural sentiment for the welfare of his widow and children. The distribution of the property appears to be the result of a well-studied plan. It is inconceivable to me that the testator at the time of making his will knew or suspected that he was the father of an unborn child. His omission to mention such a possibility or to provide any financial assistance for this child is at variance with his evident affection and generosity to the then living members of his

family. The object of the remedy for such a state of affairs as set forth in the statute as quoted "is to guard and provide against such testamentary thoughtlessness and lack of vision as prevent a testator from contemplating the possibility of after-born children and taking such possibility into account in framing a scheme for the testamentary disposition of his property." (*McLean* v. *McLean*, 207 N. Y. 365.)

The testator mentioned none of his children by name. They are not referred to as a class that might include the posthumous child, Leila. The scheme of distribution was based on the assumption that there were three children. The entrance of a fourth child destroys the balance and confuses this plan. There are too many parts to the machine. A tricycle has no place for a fourth wheel. A three-quart measure will not hold a gallon. The provisions of the will exclude the theory that a fourth child was contemplated.

The paragraph numbered "fifth" commences: "Any of my children leaving a child or children surviving, may, by last will and testament dispose of the one third part of the estate," etc. There is no process of arithmetic by which a division can be made among four children whereby each shall own one third part.

The first child dying childless vests in the survivors the share of such child.

The second child dying without children vests such share in the survivor. It is to be noted that the singular noun is used and not the plural, "survivors," which would be the case if four children were considered. This view is further emphasized by the expression "to have and to hold the same to *his* or *her* heirs and assigns forever," and not *their* heirs and assigns. There appears to be no escape from the conclusion that the interest of Leila, the posthumous child, in this estate is defined by section 26 of the Decedent Estate Law, already quoted.

Up to the time of Leila's death, covering a period of over fifty years, the assets of the estate had been kept intact and the income divided among the four children equally. At the death of Leila the assets of the estate were divided into four equal parts and the one-fourth part from which Leila received the income was equally divided among the three surviving children of the testator. The remaining three shares were charged to three separate trusts for the benefit of the three surviving children. The administration of this estate for the past sixty years discloses that Leila was deemed to own a one-fourth interest of the estate and accountings in this court from time to time were made on that basis. No property rights growing out of such accountings are involved in

this proceeding. The decrees based upon the different accountings had, appear to have involved no issue. No construction of the will until now was demanded or desired. The signing of decrees by former surrogates appears to have been perfunctory.

Under the circumstances I think it must be held that the questions now raised are new. (*Matter of Zeigler*, 218 N. Y. 544.)

The suggestion is made that in the event of the death of John Martin Yates without children, the will fails to specify to whom his share shall pass. This question is not now before the court and the contingency is purely speculative.

C. Halstead Yates, 2d, contends that he is entitled to the share that would be taken by his mother, Esther, if living. As a matter of equity there is force to the argument, but the will seems to provide otherwise.

Although as a matter of fact Leila was the first of testator's children to die, this child was not within the purview of the testator when he made his will and Esther was the first child to die as a matter of testamentary intent. The second child to die was C. Halstead, who left no children, and under the circumstance the survivor takes the share of the principal from which the deceased had the income.

The survivor is the third and only living child of the testator, John Martin Yates, to whom the entire fund should be paid.

Decreed accordingly.